## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERNEST J. WILLIAMS, ERNEST J.
WILLIAMS, JR., PATTY WILLIAMS, and
UMIKA BREED,

                 Plaintiff,

v.

                                  CASE NO. 2:13-cv-13723

WEB EQUITY HOLDINGS, LLC,
RICHARD ROOSEN, PAUL VARCHETTI,          HON. MARIANNE O. BATTANI
LYNN OLIVIER, and ROOSEN
VARCHETTI & OLIVIER, PLLC,

                 Defendants.

_____/

### OPINION AND ORDER GRANTING
### DEFENDANTS' MOTION TO DISMISS

      Before the Court is Defendants Web Equity Holdings, Inc.; Richard Roosen; Paul Varchetti; Lynn Olivier; and Roosen, Varchetti & Olivier, PLLC's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).   (Defs.' Mot. Dismiss, ECF No. 22).   Plaintiffs Ernest J. Williams, Ernest J. Williams Jr., Patty Williams, and Umika Breed filed the instant action alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and several claims under Michigan state law arising out of Defendants' attempts to collect a credit card debt.   The Court previously granted Plaintiffs leave to amend their complaint, whereby Plaintiffs voluntarily dismissed Umika Breed from the action and added several allegations to their FDCPA claim.   Shortly thereafter, Defendants filed their second motion to dismiss.   For the reasons stated below, Defendants' motion to dismiss Plaintiff's FDCPA claim is **GRANTED**, and the Court **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims.

I.      STATEMENT OF FACTS

Plaintiffs Ernest J. Williams ("Father") and Patty Williams ("Mother") are the parents of Ernest James Williams, Jr. ("Son"), all of whom reside in Flint, Michigan.  On April 12, 2011, Defendant Web Equity Holdings ("Web"), through its attorneys Defendant Roosen, Varchetti & Olivier, PLLC ("RVO"), filed an action against "Ernest J. Williams" to collect a defaulted credit card debt.  The complaint included an "Affidavit of Account," signed by Paul Varchetti, one of the named partners of RVO.  The first summons was issued against "Ernest J. Williams" at 5103 Forest Side Drive in Flint, which is the address of the Father and Mother.  Soon thereafter, an attorney representing the Father responded by letter to Defendants that the "Ernest J. Williams" residing at 5013 Forest Drive did not owe the debt.

Consequently, Web sought an order for alternative service of "Ernest J. Williams" at 526 Crapo Street in Flint, the last known residence of the Son.  However, the Son did not respond.  Therefore, on December 2, 2011, Defendants obtained a default judgment against the Son in the amount of $1,658.96.  A copy of the judgment was mailed to 526 Crapo.  Subsequently, RVO proceeded to collect the judgment by garnishing the tax refunds of Son.  The judgment was satisfied on July 9, 2013.

On August 30, 2013, Plaintiffs filed a nine count complaint in this Court alleging violation of the FDCPA, invasion of privacy by intrusion upon seclusion, violations of the Michigan Occupation Code, violations of the Michigan Debt Collection Practices Act, abuse of process, conspiracy, fraudulent misrepresentation, innocent misrepresentation, and defamation.  The Court heard oral argument on Defendants' first motion to dismiss on December 11, 2013.  Two weeks later, it issued an opinion

2

granting-in-part and denying-in-part the motion.  Specifically, the Court barred any claims disputing the validity of the underlying state court judgment.  Regarding the phone calls made by Defendants, the Court granted leave for Plaintiffs to amend their complaint to allege violations within the applicable one-year limitations period.  Plaintiffs filed a second amended complaint on February 10, 2014, and soon thereafter, Defendants filed the instant motion to dismiss.  Defendants now seek dismissal of the federal claim and request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted."  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief.  First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007).  "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" <u>Twombly</u>, 550 U.S. at 555; <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III.   ANALYSIS

The Fair Debt Collection Practices Act ("FDCPA") prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The standard applicable to FDCPA claims is "whether the 'least sophisticated consumer' would be misled by defendant's actions."  <u>Wallace v. Washington Mut. Bank, F.A.</u>, 683 F.3d 323, 326-27 (6th Cir. 2012) (quoting <u>Harvey v. Great Seneca Fin. Corp.</u>, 453 F.3d 324, 329 (6th Cir. 2006)).  An action to enforce the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

In the amended complaint, Plaintiffs allege that Defendants violated several sections of the FDCPA by harassing Plaintiffs via telephone and continuing to contact the Father and Mother after they hired an attorney.  They further assert that the individual Defendants are liable as agents of RVO under the doctrine of *respondeat superior*.

Defendants assert that Plaintiffs failed to sufficiently allege any violations of the FDCPA within the one-year statute of limitations.  Alternatively, Defendants claim that the amended complaint fails to allege any specific conduct against the individual Defendants.  Instead, Defendants claim it refers only the allegedly unlawful actions of Web and RVO.  After review, the Court finds Defendants' first argument dispositive.

4

A.      **Facts Alleged in the Amended Complaint**

In its prior opinion, the Court ordered Plaintiffs to amend their complaint to include allegations of conduct in violation of the FDCPA within the one-year statute of limitations.  Plaintiffs' amended complaint contains the following relevant allegations:

57.     Based upon information and belief, WEB made collection calls to FATHER's residence in June 2013.

58.     In June 2013, FATHER received several calls in the morning which appeared on his Comcast TV display as "private call."

59.     Upon answering the calls, a person would come on the line and ask to speak with Ernest Williams.

60.     FATHER asked who was calling.

61.     The caller verified that she was speaking with Ernest Williams and then disclosed that she was calling in regards to a $1800.00 debt owed to WEB by Ernest Williams.

62.     FATHER explained on numerous occasions that he did not owe any debt and that the caller had the wrong Ernest Williams.

63.     FATHER believes that he spoke with WEB collectors in the mornings of June 5, June 9, June 10 of 2013.

64.     MOTHER believes that she also spoke with WEB collectors in the late afternoon on June 2, and June 17, 2013.

65.     When FATHER and MOTHER answered calls from WEB the caller ID number appeared as private.

66.     Although FATHER and MOTHER did not keep contemporaneous calls logs, they have reviewed their phone records for the time period of August 2012 through August 2013 and they believed WEB called them numerous times, with the most recent calls on the above noted dates.

67.     WEB made these calls and attempted to collect a debt after knowing that FATHER was represented by counsel and that FATHER was a third party stranger to the debt.

(Am. Compl. ¶¶ 57-67, ECF No. 17).

5

Contrary to the Court's order, Plaintiffs failed to allege that the Father's credit report was adversely affected within the limitations period, stating only that Defendants caused harm to the Father's credit without providing a date or time period. Thus, the only remaining theories of liability alleged in the amended complaint are (1) that the phone calls constituted harassment in violation of § 1692d(5), and (2) that Defendants unlawfully continued to communicate with the Father and Mother even after the Father notified Defendants that he did not owe the debt and hired an attorney in violation of §§ 1692b(3) & (6).

**B.      Sufficiency of the Allegations**

1.      Harassment

Plaintiffs first argue that Defendants harassed them via telephone. Section 1692d of the FDCPA provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Specifically, it prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." § 1692d(5).

Plaintiffs' amended complaint alleges five phone calls in June 2013. There are no allegations that Defendants threatened Plaintiffs or used inappropriate language during the calls. In fact, there are no allegations regarding anything Defendants may have said over the phone during conversations with the Father or Mother. Thus, Plaintiffs' theory of harassment rests solely on the frequency of the calls.

6

Unfortunately for Plaintiffs, five calls in a one-month period, as a matter of law, is insufficient to make out a violation of § 1692d(5) for harassment.  The frequency of calls in this case does not rise to the level that would annoy, abuse, or harass a reasonable person, especially where there are no allegations regarding the content of the calls.  See Pugliese v. Prof'l Recovery Serv., Inc., 2010 WL 2632562, *10 (E.D. Mich. June 29, 2010) (350 calls in an eight month period even after the plaintiffs asked the collector to cease calling found insufficient as a matter of law to establish violation of FDCPA); Tucker v. CBD Grp., Inc., 710 F. Supp. 2d 1301, 1303 (M.D. Fla. 2010) (57 calls and 6 messages to the plaintiff found not harassing even though defendant called 7 times a day).  Indeed, as observed by one court, "[a]ny call from a debt collector may be presumed unwelcome, but that alone is insufficient to constitute a violation of the FDCPA."  Martin v. Select Portfolio Serving Holding Corp., 2008 WL 618788, *6 (S.D. Ohio March 3, 3008).  Although the Father may have experienced irritation at having the same name as the debtor, Defendants do not violate the FDCPA simply by contacting the wrong party.  See Kukawa v. Palisades Collection, LLC, 614 F. Supp. 2d 788, 792 (E.D. Mich. 2008) ("The aggravation plaintiff likely suffered as a result of having the same name as the debtor simply does not make out a violation of the FDCPA.").

　　　　2.　　　　Continued Contact/Representation by Attorney

Plaintiffs next assert that Defendants continued to call the Father and Mother even after Defendants were notified that the Father did not owe the debt.  Section 1692b of the FDCPA provides in relevant part:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall –

7

…

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

…

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b.

The language of § 1692b(3) creates an exception for debt collectors seeking to locate the debtor to contact persons they reasonably believe have such location information.  This, in turn, imposes a pleading burden on plaintiffs alleging a violation of this section to provide facts to support an inference that the debt collector had no reason to believe that the person knew the whereabouts of the debtor or that they provided an incomplete or erroneous response.

As previously noted, Plaintiffs provided no allegations regarding the content of the phone calls or whether the Father or Mother provided any information regarding the whereabouts of the Son.  From the face of the complaint, it may only be inferred that Plaintiffs answered the phone, immediately informed whoever was on the line that they did not owe any debt, and then hung up.  There are no allegations that give rise to an inference that Defendants unreasonably contacted the parents of the debtor to determine his whereabouts.  Likewise, there are no allegations that the Father or Mother truthfully did not have information regarding the location of the Son and that they

8

conveyed this fact to Defendants.  Consequently, this is insufficient to state a violation of the FDCPA under § 1692b(3).

Plaintiffs also assert that Defendants violated the § 1692b by continuing to call the Father and Mother after they were represented by an attorney.  Section 1692b(6) provides that once a "consumer" is represented by counsel, the debt collector shall not contact any other person except that attorney.  See Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926, 935 n.2 (9th Cir. 2007) (noting that "when a debt collector knows that a consumer has retained counsel with regard to the subject debt, he may not generally contact anyone other than the attorney to determine the consumer's whereabouts.").  Importantly, this section applies only to "consumers," which is defined under the FDCPA as any natural person who is obligated or allegedly obligated to pay a debt.  15 U.S.C. § 1692a(3).  The consumer in this case is the Son.  However, the amended complaint fails to allege that the Son ever contacted an attorney or that Defendants knew the Son was represented by counsel.  Therefore, Defendants' calls to Plaintiffs did not violate the FDCPA.  The fact that the Mother and Father were represented by separate counsel is of no import.

Consequently, Plaintiffs' FDCPA claim fails.

## C.   Remaining State Law Claims

Plaintiffs' remaining claims fall under state law.  The original basis for federal subject matter jurisdiction over Plaintiffs' case relied solely upon the federal cause of action under the FDCPA and the Court's simultaneous exercise of supplemental jurisdiction over the state law claims.  Now that the federal claim is dismissed, the Court

must decide whether to continue exercising supplemental jurisdiction over Plaintiffs' remaining claims.

The Sixth Circuit has held that "generally, 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1182 (6th Cir. 1993) (quoting Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992)).   In deciding whether to exercise jurisdiction over supplemental state law claims, "a district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." Id.  This decision is within the discretion of the court. Id.

In the case at hand, the Court finds that the need to abstain from deciding issues of state law outweigh any concerns regarding judicial economy.   Consequently, the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims and dismisses them without prejudice.

## IV.   CONCLUSION

Accordingly, Defendants' motion is **GRANTED** and Plaintiffs' FDCPA claim is **DISMISSED WITH PREJUDICE**.   In addition, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and thus they are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Date:  August 5, 2014                    s/Marianne O. Battani
                                         MARIANNE O. BATTANI
                                         United States District Judge

10

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 5, 2014.

s/ Kay Doaks
Case Manager